UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| VICTOR MANUEL RAMIREZ-MENDOZA, on behalf of himself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 1:12-cv-00014 Chief Judge Haynes |
| v. | ) ) | |
| MAURY COUNTY, TENNESSEE | ) ) ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

Plaintiff, Victor Manuel Ramirez-Mendoza, filed this action under 42 U.S.C. § 1983, against Defendant, Maury County, Tennessee. Plaintiff's claims are that Defendant violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff's fedearl law claims arise from Defendant's detention and transportation of Plaintiff to United States Immigration and Customs Enforcement's ("ICE") offices in Nashville, Tennessee.

Before the Court are Defendant's motion for summary judgment (Docket Entry No. 36) and Plaintiff's motion for partial summary judgment (Docket Entry No. 4). Defendant contends, in essence, that Plaintiff's detention and transportation did not violate his Fourth or Fourteenth Amendment rights, and Plaintiff was not detained pursuant to Defendant's official policy or custom. In his cross motion, Plaintiff contends, in sum, that Defendant's policy of seizing, detaining, and transferring individuals to ICE in excess of legal authority was the moving force that caused violations of Plaintiff's Fourth and Fourteenth Amendment rights.

1

# I. Findings of Fact[1]

On January 19, 2011, Plaintiff was arrested in Maury County, Tennessee for driving on a suspended license. (Docket Entry No. 44, Defendant's Responses to Plaintiff's Concise Statement of Undisputed Material Facts, at ¶ 1). Following Plaintiff's arrest, an officer of the Maury County Sheriff's Department ("Sheriff's Department") booked Plaintiff into the Maury County Jail at 8:33 p.m. Id. at ¶ 2. On January 20, 2011, after Plaintiff's arrest,[2] Defendant received an ICE immigration detainer on a Form I-247 for Plaintiff. (Docket Entry No. 35, Concise Statement of Material Facts of Defendant Maury County, Tennessee, at ¶ 2).

On January 26, 2011, Plaintiff appeared in Maury County General Sessions Court. (Docket Entry No. 44, Defendant's Responses to Plaintiff's Concise Statement of Undisputed Material Facts, at ¶ 3). The Maury County General Sessions Court dismissed Plaintiff's state criminal charges. Id. at ¶ 4. Based upon an ICE detainer, the presiding judge wrote "Release to ICE" on the dismissal Order. (Docket Entry No. 35, at ¶ 5). The Sheriff's Department returned Plaintiff to the Maury County Jail and detained Plaintiff there for two additional days. (Docket Entry No. 44, at ¶¶ 5-6).

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). Upon review of the parties' statements of undisputed facts, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

[2] Tennessee law provides that when a person is arrested, booked or confined for any period in a county or municipal jail, the county or municipal officials shall verify the citizenship status of that person, pursuant to a standardized written procedure, and report to the appropriate immigration and customs enforcement office any such persons who are in violation of the Immigration and Naturalization Act. Tenn.Code Ann. § 40-7-123.

On January 28, 2011, Plaintiff was "released to ICE" at approximately 7:40 a.m. Id. at ¶ 7. A Sheriff's deputy handcuffed Plaintiff and transported Plaintiff in a sheriff's vehicle, to the ICE office at 247 Venture Circle, Nashville, Tennessee from the Maury County Jail. Id. at ¶¶ 8-9. Upon arriving at the ICE facility, a Sheriff Department deputy entered the facility with Plaintiff and transferred Plaintiff to ICE's custody. Id. at ¶ 10. This transfer to ICE's custody occurred within 48 hours of the dismissal of Plaintiff's state criminal charges. (Docket Entry No. 35, at ¶ 7).

The sole reason for ICE's detainer causing Plaintiff's continued detention was to investigate whether Plaintiff was subject to removal from the United States. Id. at ¶ 11. The Immigration Detainer Form does not reflect any outstanding document, warrant, or prior deportation or removal order for Plaintiff at the time ICE transmitted the detainer to the Sheriff's department. Id. at ¶ 12. Defendant did not have a formal or informal agreement with ICE that would permit Plaintiff's detention and transportation or deputize Sheriff's Department employees to perform the duties of ICE agents, or to transport ICE detainees. Id. at ¶ 13.

Defendant detained and transported at least fifty-one individuals from the Maury County Jail to an ICE facility between October 2010 and January 2012. Id. at ¶ 14. These transfers utilized Defendant's vehicles, and were sanctioned by the Defendant. Id. at ¶ 18.

## II. Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with

3

all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some

discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion

> and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshaling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshaling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and

7

other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?.

For his Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983, Plaintiff must establish that: (1) he was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under the color of state law. See Spurlock v. Whitely, 971 F. Supp. 1166, 1175 (M.D. Tenn. 1997). Moreover, to establish municipal liability under 42 U.S.C. § 1983 for alleged constitutional violations, Plaintiff must establish that the alleged "harm was caused by a constitutional violation and that policy or custom of the municipality was the 'moving force' behind the deprivation of their rights. Rios-Quiroz v. Williamson County, No. 3-11-1168, 2012 WL 3945354, at *3 (M.D. Tenn. Sept. 10, 2012) (citing Miller v. Sanilac County, 606 F.3d 240, 255 (6th Cir. 2010). "Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs." Id. Plaintiff must also demonstrate "a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the 'moving force' behind the violation. Id. (citing Spears v. Ruth, 589 F.3d 249, 256

(6th Cir. 2009).

First, Plaintiff contends his Fourth Amendment rights were violated during the approximately 48 hour holding period between the time Plaintiff's state criminal charge was dismissed and when ICE assumed custody of Plaintiff. Plaintiff contends that Defendant exceeded the scope the ICE detainer, and effected a seizure of Plaintiff in violation of his Fourth Amendment. Here, Plaintiff contends that because his state criminal charges were dismissed on January 26, 2011, the sole legal justification for his continued detention by Defendant until January 28, 2011 was the ICE detainer. As such, Plaintiff contends he was unlawfully seized as Defendant has not asserted any facts showing probable cause for his detention and transportation by Defendant to ICE's Nashville, Tennessee facilities.

To sustain a claim of unlawful seizure under the Fourth Amendment, Plaintiff must prove the seizure occurred without probable cause. Stemler v. City of Florence, 126 F.3d 856, 871 (6th Cir. 1997). Probable cause for a seizure exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995).

Defendant cites Rios-Quiroz v. Williamson County, No. 3-11-1168, 2012 WL 3945354 (M.D. Tenn. Sept. 10, 2012) for its contention that Defendant is mandated by federal law to comply with an ICE detainer. Thus, Defendant argues that Plaintiff cannot successfully assert claims for any constitutional violation. In Rios-Quiroz, plaintiffs voluntarily reported to the Williamson County Criminal Justice Center after receiving misdemeanor citations. Id. at *1-2. Sheriff's Office employees contacted ICE about plaintiffs' immigration status. Id. at *2. ICE officials advised Williamson County personnel to hold plaintiffs in custody until ICE assumed custody of the

plaintiffs. Id. The Rios-Quiroz plaintiffs filed an action challenging the time period between the end of the booking process and ICE's assumption of custody of the plaintiffs. Id. at *1. There, the plaintiffs alleged, in sum: (1) that the defendant's practice and custom of warrantless immigration arrests during their misdemeanor bookings violated the plaintiffs' Fourth Amendment rights; (2) that the defendant's practice and custom of depriving individuals of their liberty without an opportunity to challenge the deprivation violated the plaintiffs' Fourteenth Amendment rights; (3) that the defendant's actions violated the Supremacy Clause of the United States Constitution; (4) and that the defendant falsely imprisoned the plaintiffs without legal justification. Id. at *1-2.

In considering the parties' cross-motions for summary judgment on whether a county or municipal law enforcement agency may honor an ICE detainer after completion of the booking process, the Honorable Todd J. Campbell cited federal regulations that "a detainer serves to advise another law enforcement agency that [ICE] seeks custody of an alien presently in the custody of that agency for the purpose of arresting and removing the alien." Id. at *3 (citing 8 C.F.R. § 287.7(a)). A detainer is a "request" from ICE that the local agency advise, prior to the release of the individual, for ICE to assume custody. Id. Judge Campbell cited federal regulations that also provide: "Upon a determination by [ICE] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency **shall** maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays and holidays in order to permit assumption of custody by [ICE]." 8 C.F.R. § 287.7(d) (emphasis and alterations added). Judge Campbell deemed 8 C.F.R. § 287.7 "ambiguous because, while subsection (a) states that the ICE detainer is a 'request,' Subsection (d) provides that the local law enforcement agency 'shall'

maintain custody of the alien pursuant to the detainer." Rios-Quiroz, at *4. Judge Campbell concluded, however, that the language in subsection (d) created a legal obligation for the county officials and compelled their compliance with ICE's immigration detainer. Id. Defendant contends Rios-Quiroz supports its contention that county jail officials had a legal duty to maintain custody of Plaintiff for a period of time not to exceed 48 hours and to assist ICE in acquiring custody of Plaintiff.

Given Rios-Quiroz's holding, the Court agrees and concludes that the ICE detainer imposed a federal mandate upon the Defendant. The Court also concludes Defendant was required by federal law to maintain custody of Plaintiff for a period not to exceed 48 hours. As a result, the Defendant was not required to make an independent probable cause determination of Plaintiff's immigration status. Thus, the Court concludes Defendant did not violate Plaintiff's Fourth Amendment rights by detaining Plaintiff after his state criminal charges were dismissed.

As to Plaintiff's Fourth Amendment claim based upon Defendant's officer's transporting him from the Maury County Jail to ICE's Nashville facilities, Plaintiff contends that neither the ICE detainer nor the federal regulations for ICE detainers granted Defendant express authority to transport Plaintiff beyond Maury County. Thus, Plaintiff argues that Defendant exceeded the scope of its legal authority. Moreover, Plaintiff asserts that Defendant's involuntary transport of Plaintiff constituted a distinct seizure requiring probable cause. In response, Defendant contends that because Plaintiff was lawfully detained, and because the detention did not exceed the 48 hour time-limit, Defendant did not violate Plaintiff's Fourth Amendment rights.

In addition, on the Form I-247 detainer for Plaintiff, ICE requested the Defendant's officials to: (1) "Maintain custody of the subject for a period not to exceed 48 hours"; (2) "Notify this office

of the time of release at least 30 days prior to release or as far in advance as possible"; and (3) "Notify this office in the event of the inmate's death, hospitalization or transfer to another institution." (Docket Entry No. 41-3). As discussed above, the Court concludes that the "shall" language provided in 8 C.F.R. § 287.7(d) creates a mandatary regulation, requiring Defendant to maintain custody of Plaintiff. ICE detainers "serve[] to advise another law enforcement agency that [ICE] seeks custody of an alien presently in the custody of that agency for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a).

Thus, the Court concludes that Defendant's efforts to assist ICE in acquiring physical custody of Plaintiff neither altered the nature of Plaintiff's federal detention nor interfered with ICE's determination to assume custody of Plaintiff. This transportation did not extend Plaintiff's detention beyond the lawfully permitted time frame. Here, Defendant's transportation of Plaintiff served the ICE detainer's purpose established by federal law. Thus, the Court concludes Plaintiff's transportation to ICE's Nashville, Tennessee facilities did not violate the Fourth Amendment. Given that Plaintiff did not suffer a constitutional injury, the Court need not address whether Defendant's transportation of Plaintiff to ICE was in furtherance of an official policy or custom.

As to Plaintiff's Fourteenth Amendment due process claim challenging Defendant's officer's transporting Plaintiff to ICE's Nashville, Tennessee office, the Fourth Amendment governs all claims arising out of an arrest. As the Supreme Court explained: "[w]here a particular [constitutional] amendment provides an explicit textual course of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing th[o]se claims." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). Accordingly, the Court concludes that Plaintiff's Fourteenth

Amendment claims should be dismissed as a matter of law.

Any challenge to the constitutionality of 8 C.F.R.§ 287.7 requires a claim against the federal government that is not a party to this action. "Plaintiffs' complaint that ICE detainers require neither probably cause nor reasonable suspicion to issue is not a complaint addressed to Defendant. Such a complaint is properly made toward the federal government which promulgated the regulations and issued the ICE detainers." Rios-Quiroz, at *4.

For these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 36) should be granted, and Plaintiff's motion for partial summary judgment (Docket Entry No. 41) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this 25th day of January, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court.